NIMKE *v.* SEELEY.

1. CONTRACTS—BUILDING CONSTRUCTION—TILE WORK.
    Finding of trial court in action by contractor for balance due under contract and for extras that credit for tile work paid for by owner was not chargeable to contractor, *held,* justified under the proof submitted, where specifications for same were omitted from copy upon which latter submitted his bid.

2. SAME—STEEL JOISTS—LARGER RAFTERS.
    Extra charges for difference in cost of wooden and steel joists and for larger rafters *held,* properly allowed in action by contractor for balance due and extras on building contract.

3. SAME—LEADED GLASS.
    Extra charge for leaded glass *held,* improperly allowed in action by building contractor notwithstanding copy of contract delivered to him omitted word "except" in specifications that owner should "furnish all glass except leaded glass."

Appeal from Washtenaw; Sample (George W.), J. Submitted July 21, 1934. (Docket No. 81, Calendar No. 37,880.) Decided October 23, 1934.

Assumpsit by Will F. C. Nimke against Dana E. Seeley for sums allegedly due under a building contract and for extras. Set-off by defendant for amount paid for work alleged to have been contracted for by plaintiff. Judgment for plaintiff. Defendant appeals. Remanded for entry of judgment in reduced amount.

*Frank B. DeVine,* for plaintiff.

*Stivers & Hooper* (*Albert E. Blashfield,* of counsel), for defendant.

NELSON SHARPE, C. J.  During the summer of 1929 the defendant employed Woodworth & Loree, a firm of architects in the city of Ann Arbor, to design and prepare drawings and specifications for a residence and garage to be constructed for him. Upon the completion of the drawings and specifications, the architects caused a number of copies to be made and submitted them to contractors, including the plaintiff, for a bid thereon. Plaintiff submitted a written proposal "to furnish all apparatus, materials and labor required to complete the work as required by the drawings and specifications" for the sum of $34,479. Some changes were made which reduced the amount of the bid to $32,551, and a written contract therefor was entered into on September 30, 1929.

This action was brought by plaintiff to recover a balance claimed by him to be due thereunder and for certain extra material and labor expended by him. He had judgment on trial by the court without

a jury in the sum of $1,856.28, from which the defendant has taken this appeal.

In arriving at this amount, the court declined to allow the defendant the sum of $1,196 which he had paid to the Ann Arbor Tile & Fireplace Company for certain tile work in the building. The contract contained an undertaking on the part of the plaintiff similar to that above quoted from his proposal, and he claimed that this tile work was not included therein.

The architects had prepared several blue print copies of the drawings and 15 copies of the specifications. Ten copies were typed, five at a time, by a typist in their office, and five copies were made by a professional typist outside of the office. The pages were numbered consecutively at the bottoms thereof. Plaintiff produced the copy which he testified had been furnished to him, and from which he had estimated the cost as disclosed in his bid, and pages 44 and 45, on which the tile work in question appears as shown by the architects' copy, do not appear therein. He also testified that as the work progressed the absence of any provision for the tile work was called to his attention by his foreman; that Mr. Woodworth, one of the firm of architects, was called in and, after some discussion, he was asked by Woodworth, "Well, will you look after it?" and he answered, "All right," and that he soon after entered into the contract with the tile company to do the work for the price above stated.

It appears that in order to secure a building permit for the work it was necessary to file a copy of the blue print and specifications with the city engineer; that two copies of the specifications were delivered to his office by Mr. Woodworth, and after the permit was issued one of these copies was delivered to the plaintiff. This copy and that filed in

the engineer's office were submitted in evidence, and the two pages do not appear therein.

Woodworth testified that his attention was called to the missing pages by plaintiff's foreman and he said to him "that they probably had been removed in figuring the job;" that he went back to his own office and checked his specifications "and found them in order;" that the missing pages were first called to his attention by the plaintiff after all the work had been practically completed; that plaintiff then said that "he had been checking over his figures and that he hadn't figured in the tile work;" that he told him he would take the matter up with the defendant, and that he did so, but was unable to secure his assent to the allowance of the tile bill.

The missing pages contain the specifications for the tile work, and no question is raised but that the defendant paid for this work and is entitled to a credit therefor if plaintiff was obligated under his contract to perform it. It appears that the tile work was referred to on other pages of the specifications, and it is the claim of the defendant that plaintiff was thus given notice that it was to be performed by him, and that the omission of these pages, if they were missing, should have been apparent to him, and must have been, from the number at the bottom of the preceding page. There is force in this contention.

The controlling fact, as we view it, is that the tile work was not included in the bid submitted by plaintiff. In it he listed 10 items of estimated cost and expenditures, which totaled the sum of $34,479, and the words "Tile & marble" appear therein. No price, however, was set opposite each item. But he testified that with it he submitted a list of 25 items, with the cost of each set opposite it, which amounted to the sum above stated. A carbon copy of this list

in his possession was introduced on defendant's failure to produce the original. The tile work does not appear therein. Woodworth testified that he had never received this list. It appears from his testimony, however, that the file from his office containing the records of the transaction was surreptitiously removed therefrom. In our opinion, the evidence does not connect the plaintiff with such removal.

The contract provided that:

"The owner shall make payments on account of the contract as provided therein, as follows: On or about the 10th day of each month 90 per cent. of the value, based on the contract prices, of labor and materials incorporated in the work and of materials suitably stored at the site thereof up to the first day of that month, as estimated by the architect, less the aggregate of previous payments."

Unless the prices charged by the plaintiff for the different classes of labor and materials which entered into the construction of the building were furnished to the architect, it would have been seemingly impossible for him to have complied with this provision, and it is undisputed that he did so.

The testimony of the plaintiff in respect to this list is corroborated by that of Louis A. Humrich, who furnished the screens for the plaintiff required by the contract. He testified that when he sought to obtain the contract from the plaintiff he interviewed Mr. Woodworth in his office, and that he said—"that if our screens could be purchased for the price that Mr. Nimke had originally figured in his contract, it was agreeable with him to use our equipment;" that Woodworth then consulted "a list made out on Mr. Nimke's letterhead, or a sheet the size of a letterhead," which looked like the carbon copy shown

him, and that, as he remembered, the price thereon for the screens was $820. This was the price fixed on the carbon copy therefor.

It clearly appears that pages 44 and 45 were omitted from the specifications furnished plaintiff, and pursuant to which he submitted his bid. The heading on page 43 is "Tile and Marble Work." It provides that—

"The contractor shall, as soon as possible, after the award of the contract, submit to the architects and owners a full and complete set of samples of all the tile and marble to be used in this work."

It is conceded that no samples of tiles were submitted. This page also contains a heading "Preparation for Tile Floors," and specifications as to the use of the marble, but the specifications for the tile work all appeared on pages 44 and 45 of the architects' copy. While the list of items to which was attached the prices charged for each specific part of the work as shown by the carbon copy contained the words "Tile and Marble" above referred to, the intent of the plaintiff to include all tile work cannot be inferred therefrom.

There is much dispute as to the facts upon which decision of this question is dependent, but we are impressed that the finding of the trial court that the cost of the tile work was not chargeable to plaintiff was justified by the proof submitted.

Error is assigned upon the allowance to the plaintiff of the sum of $72.89 as extra compensation for the difference in the cost of steel joists put in over the garage and the wood joists provided for in the specifications. The specifications called for wood joists 2x10, set 16 inches on center. The space was about 21 feet. Plaintiff's estimate of cost was made thereon. Plaintiff testified that when he reached

this part of the work it became apparent to him that these joists would not sustain the load of the bathroom which was to be placed on them; that he called ,Woodworth's attention to it and suggested that steel joists should be used; that they discussed the placing of the wood joists closer together and the difference in the cost; that Woodworth said that "whenever we got the price, whatever the difference would be, that would be the price he would have;" that he ordered the steel joists and Woodworth was present when they were being put in, and raised no objection thereto, and that the price paid for them was reasonable. Woodworth testified that the sufficiency of the wood joists as provided for in the specifications was discussed with plaintiff, and that he suggested placing them on a 12-inch center, and that he in no way ordered the use of the steel joists. In our opinion this extra charge was properly allowed.

The trial court allowed the plaintiff $112.50 for leaded glass, extra material furnished by him. In the list of estimates of cost shown by the carbon copy appears the item "Glass & Glazing.....$825." The specifications provided that some of the glass to be used was to be "leaded." At the end of the provision relating thereto appeared:

"*Alternate.* Give amount to be deducted if owner furnishes all glass except leaded glass. The owner to furnish glass only and to be installed by this contractor."

The difference between the amount of plaintiff's bid, $34,479, and the contract price, $32,551, was arrived at by one small addition thereto and three deductions therefrom. One of these deductions was for glass, $208. Clearly, this was for the glass other than leaded glass to be furnished by plaintiff under

the above "alternate." In plaintiff's bid he stated that the deduction to be made therefor was $208.

Three copies of the contract were prepared and signed by both plaintiff and defendant. In two of them appeared: "Owner shall furnish all glass except leaded glass and this contractor shall install all glass." In the third copy, and, unfortunately, the one delivered to plaintiff, the word "except" was omitted. The leaded glass cost the plaintiff $112.50. He testified: "I claim that the reason why I was not required to furnish the leaded glass is the language in my contract." Clearly, the omission of the word "except" in the copy of the contract delivered to plaintiff was an error of which, in view of the provision in the specifications and in his bid, he must have been aware. The use of the words "all glass," followed by "leaded glass," was sufficient in itself to apprise him of the error made by the typist. This amount must be disallowed.

In his claim for extras plaintiff included the sum of $37.50 for "difference on rafter materials." The plaintiff testified that in making his bid he had figured on the rafters being 2x6; but that the building inspector insisted they should be 2x8, and that was the size he used, and that Woodworth said he should bring in his claim for the difference in cost as an extra. Woodworth testified:

"The drawings called for 2x8 rafters, and at the time that was drawn it was the plan to use slate roof, which would be heavier than the average roof. But the final contract was drawn up on the basis of using a wood roof, which would not necessitate 2x8 rafters throughout. And I think that alternate, the roof alternate which Mr. Nimke gave, included a deduction for using 2x6 rafters instead of 2x8."

While he claimed that he did not authorize the change, he admitted that he saw the plaintiff install-

ing the larger size. In our opinion this item was properly allowed.

The judgment entered is reversed and set aside and the cause remanded, with direction to the trial court to deduct therefrom the sum of $112.50 allowed for the glass and to enter a judgment for the balance thereof.

No costs will be allowed.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.